IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:05-476-RBH |
| | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| | ) | |
| ELIA FIATA, et al. | ) | |
| | ) | |

Pending before the court is Defendant Elia Fiata's (hereinafter "Fiata") motion to suppress and for other relief [Entry #133], which was filed on March 13, 2006. The court heard oral arguments regarding this motion on April 27, 2006, and took the matter under advisement. After carefully considering the motion, memoranda, and the record in this case, the court finds, for the reasons set forth below, that the motion should be denied.

## **Background Facts Alleged in the Indictment**

To summarize, the Third Superseding Indictment (hereinafter "Indictment") in this case alleges that Comprehensive Care and Pain Management Centers (hereinafter "CCPMC"), also known as Carolina Pain and Neurology, was a pain management clinic owned and operated by David Michael Woodward. David Michael Woodward, an unindicted co-conspirator who was previously prosecuted on charges stemming from his operation of CCPMC, was a licensed physician operating out of Myrtle Beach, South Carolina, whose practice area specialized in the treatment of pain.

The Indictment alleges that in early 1996, a person known to the grand jury approached Louis Paladino, Frank LoCascio and Joseph LoCascio about opening an magnetic resonance imaging (hereinafter "MRI") company. At Louis Paladino's suggestion, that company, Preferred Imaging, Inc. (hereinafter "Preferred Imaging"), would be located in Myrtle Beach, South Carolina. Frank LoCascio

was President of Preferred Imaging and an owner of stock. Elia Fiata was an officer of Preferred Imaging, the company Treasurer and Secretary, and an owner of Preferred Imaging stock. Louis Paladino was the on-site operator of Preferred Imaging and supervisor of the daily operation. Joseph LoCascio was an owner of Preferred Imaging stock.

The Indictment further alleges that Louis Paladino, Frank LoCascio, Joseph LoCascio, and Elia Fiata met with David Michael Woodward in early to mid 1996 to coordinate placement of Preferred Imaging within the CCPMC facility. In addition, Louis Paladino, Frank LoCascio, Joseph LoCascio and Elia Fiata negotiated a financial payment system with David Michael Woodward in the form of rent and a medical director's fee. Louis Paladino, Frank LoCascio, Joseph LoCascio, and Elia Fiata allegedly agreed to pay David Michael Woodward $5,000 per month in rent for the 750 square feet of physical space within the CCPMC facility occupied by Preferred Imaging. The $5,000 per month payment was the same amount CCPMC paid David Michael Woodward to rent the entire 6,250 square feet of space. The amount paid by Preferred Imaging to David Michael Woodward allegedly exceeded the fair market value of the space. Louis Paladino, Frank LoCascio, Joseph LoCascio, and Elia Fiata agreed to pay David Michael Woodward $5,000 per month to fill the position of medical director for Preferred Imaging. It is alleged that as medical director, David Michael Woodward was not required to perform any services for Preferred Imaging.

In return for the aggregate $10,000 per month payment from Preferred Imaging, David Michael Woodward and CCPMC allegedly agreed to refer patients to Preferred Imaging to have MRIs conducted. The Indictment alleges that the total amount paid by Preferred Imaging to David Michael Woodward and CCPMC as part of the scheme was approximately $317,500.

As part of the alleged scheme to obtain reimbursement from the United States in violation of

federal laws, Frank LoCascio, Elia Fiata, Joseph LoCascio, and Louis Paladino allegedly caused the United States to pay claims for health care services based on false claims and false statements that the services were provided in compliance with all laws regarding the provision of healthcare services. The Indictment alleges that Frank LoCascio, Elia Fiata, Joseph LoCascio and Louis Paladino knowingly presented, and caused to be presented, false and fraudulent claims for payment and approval to the United States, including claims for reimbursement for services rendered to patients unlawfully referred to Preferred Imaging by Woodward and CCPMC in exchange for kickbacks and illegal reimbursements from Frank LoCascio, Elia Fiata, Joseph LoCascio and Louis Paladino. Frank LoCascio, Elia Fiata, Joseph LoCascio, and Louis Paladino were allegedly paid by Medicare for claims totaling approximately $166,480.30, by Medicaid for claims totaling approximately $388,943.04, and by Blue Cross Blue Shield of South Carolina for claims totaling approximately $241,414.08. The Indictment further alleges that approximately 92 % of the patients referred to Preferred Imaging were referred by CCPMC as a result of this fraudulent scheme.

The Indictment in this case contains six counts. One count charges Fiata and others with conspiracy in violation of 18 U.S.C. § 371. Four counts charge that Fiata and others "knowingly and willfully offered to pay and paid remuneration (including kickback and bribes), directly and indirectly, overtly and covertly, in cash and in kind to David Michael Woodward and to his company, Comprehensive Care and Pain Management Clinic, to induce him to:

> (A) refer patients to Preferred Imaging for the furnishing of and arranging for the furnishing of items and services for which payment was made in whole and in part under Medicare; and
>
> (B) to purchase, lease, order, and to arrange for and recommend the purchasing, leasing, and ordering from Preferred Imaging of goods, facilities, services, and items for which payment was made in whole and in part under Medicare.

All in violation of Title 42, United States Code, Section 1320a-7b(b)." The last count charges Fiata only with obstruction of justice in violation of 18 U.S.C. § 1512(c).

## Discussion

In the motion before the court, Fiata requests that the court suppress evidence of a March 18, 2003 search of his accounting office and that the court dismiss counts two-five (2-5) of the Indictment as to him. The court will address each in turn.

### I. Request for Suppression of Evidence Obtained During the March 18, 2003 Search

On August 27, 2001 and September 17, 2001 a federal grand jury sitting in Columbia, South Carolina issued subpoenas to Fiata at several addresses requesting "correspondence or other documents referencing or relating to communications between Preferred Imaging and/or any agent or employee of Preferred Imaging and Dr. David Michael Woodward d/b/a Carolina Neurology d/b/a Comprehensive Care and/or any agent or employee of Dr. David Michael Woodward." On November 13, 2001, Fiata provided documents in response to the subpoenas, along with a certification that he had complied with such subpoenas.

On March 18, 2003, agents of the Postal Inspection Service executed a search warrant issued by United States Magistrate Judge James C. Francis, IV of the United States District Court for the Southern District of New York on Fiata's accounting office at 35 East Grassy Sprain Road. Some of the evidence seized during that search is the basis for the obstruction count against Fiata in the Indictment. Among the items seized was a letter from Defendant Lou Paladino to Frank LoCascio dated June 21, 1996, which the government argues was directly responsive to the grand jury subpoenas. The Indictment charges that the obstruction occurred from on or about August 27, 2001, to on or about March 18, 2003, in the District of South Carolina, when defendant "ELIA FIATA corruptly concealed

records and documents, and attempted to corruptly conceal records and documents, with the intent to impair the integrity and availability of such records and documents for use at official proceedings, in that the defendant ELIA FIATA withheld from the Government the above-referenced June 21,1996 letter, even though the federal subpoenas described above contained language specifically requesting 'correspondence or other documents referencing or relating to communications between Preferred Imaging and/or any agent or employee of Preferred Imaging and Dr. David Michael Woodward d/b/a Carolina Neurology d/b/a Comprehensive Care and/or any agent or employee of Dr. David Michael Woodward.'"

In the current motion pending before the court, Fiata argues that the evidence obtained during the March 18, 2003 search should be suppressed because the affidavit supporting the warrant lacks probable cause to believe that Preferred Imaging records would be at Fiata's accounting office on 35 East Grassy Sprain Road and because the warrant fails to satisfy the specificity requirement of the Fourth Amendment.

> A.   *Whether the Affidavit in Support of the Search Warrant Established Probable Cause for the Search of Preferred Imaging Records at Fiata's Office on 35 East Grassy Sprain Road*

Although not argued in the written motion and memorandum in support thereof, Fiata's "new" local counsel Lionel S. Lofton, argued at the hearing on this motion that there was lack of probable cause in the affidavit in support of the search warrant as to what reason agents had to believe that any Preferred Imaging records would be located at Fiata's office on 35 East Grassy Sprain Road in Yonkers, New York. Fiata concedes that when Preferred Imaging was incorporated in 1996 it used Fiata's office located at 645 Bronx River Road in Yonkers, New York, as its business address. However, Fiata notes that Preferred Imaging went out of business in 2001 and since that time he relocated his office from the

Bronx River Road location to the 35 East Grassy Sprain Road address. Fiata maintains that there is nothing in the affidavit to indicate that Preferred Imaging did any business, or Fiata on behalf of Preferred Imaging, at the Grassy Sprain Road location in 2003. Therefore, Fiata contends that the affidavit is totally void of any probable cause to believe that the Preferred Imaging records ever moved to Fiata's new office on Grassy Sprain Road.

The government responded to this argument at the hearing by noting that when Fiata responded to the aforementioned grand jury subpoenas, which requested records relating to the Preferred Imaging business, he mailed his response from the Grassy Sprain Road location. In fact, after the hearing, counsel for the government submitted a copy of the envelope containing Fiata's response to the subpoenas and it confirms that the documents were mailed from the Grassy Sprain Road location.[1] The government argues that this proves Preferred Imaging's records had been moved to Fiata's new office on Grassy Sprain Road.

Although the court recognizes that counsel for the government was not appropriately prepared for Fiata's "new" additional argument at the hearing, the court finds the government's argument in this regard is not determinative. The Fourth Circuit has held that "[w]hen reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Although the court agrees that Fiata's response to the subpoena in 2001 tends to show that Preferred Imaging records were being kept at Fiata's current office on Grassy Sprain Road, there has been no showing that the magistrate who issued the search warrant had such knowledge. However, the court finds, as noted below, that the magistrate had probable cause to believe that Preferred Imaging records would be kept

---

[1] The court has filed the envelope [Entry # 233], thereby, making it a part of the record.

at Fiata's current office on Grassy Sprain Road.

The court notes that when reviewing a magistrate judge's determination that there was sufficient probable cause to issue a warrant, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

With those well-established precedents in mind, the court must review the magistrate judge's finding of probable cause in the case at bar. Probable cause is a "practical, nontechnical conception." Gates, 462 U.S. at 231 (quotation marks omitted). This court must apply a totality of the circumstances test to determine whether probable cause supported the search warrant. Id. at 231, 233; Wilhelm, 80 F.3d at 119. The Supreme Court has found that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Gates, 462 U.S. at 238 (quoting Jones v. United States, 362 U.S. 251, 271 (1960)).

A review of the affidavit submitted by Postal Inspector Cynthia Fraterrigo in support of the search warrant in this case, reveals at paragraph thirty-seven (37) that:

> Business records list Joseph Locascio's wife Joyce, and their son, Frank, as owners of Preferred Imaging, which was incorporated in 1996 with an address of 645 Bronx River Road, Yonkers, New York. This address is Fiata's *former* business address. The investigation in South Carolina has further shown that Fiata handled the records and finances of Preferred Imaging from the FIATA OFFICE, having provided checks with the address of 645 Bronx River Road during the time that his office was based there. Based on the foregoing, probable cause exists to believe that records of Preferred Imaging will be housed at Fiata's *current* office, where his other business, investment

and financial files are *now* located, at the FIATA OFFICE.

Affidavit in Support of Application for Search Warrants, Entry #133-4, p. 2 of 3 (emphasis added).

Notably, this particular paragraph of the affidavit makes it clear that Magistrate Judge Francis had information before him that Fiata handled records and finances of Preferred Imaging from his office at 645 Bronx River Road during the time his office was based there. The affiant then proceeds to indicate that based on the foregoing (information provided in paragraphs 35-37) probable cause exists to believe that Preferred Imaging will be housed at Fiata's *current office*, where his other business files are *now* located. It is apparent to this court that Magistrate Judge Francis was not mislead by the affiant and was informed of Fiata's *former* address in this particular paragraph and of Fiata's *current* address by way of the first page of the affidavit and the caption on the warrant. All of the facts as to where Fiata's office was before, and where it was when the search was to commence, were in front of the magistrate judge. As such, it appears to this court that Magistrate Judge Francis made a "practical, common-sense decision . . . given all the circumstances set forth in the affidavit before him . . . that there [was] a fair probability" that Preferred Imaging records would be found at Fiata's current office at 35 East Grassy Sprain Road. Gates, 462 U.S. at 238. After all, common sense dictates that when an office relocates, it will take its records to the new location. Likewise, records are generally created for the very purpose of preservation. Again, the information regarding the change of address was before the magistrate judge and this court finds that under the totality of the circumstances test, the magistrate judge had a substantial basis for concluding that probable cause existed that Preferred Imaging records would be found at Fiata's current office on 35 East Grassy Sprain Road and that he knowingly sanctioned the search of that location.

Moreover, even assuming *arguendo* that no probable cause supported the search at 35 East

Grassy Sprain Road, the fruits of the search would nonetheless be admissible under the good faith exception to the exclusionary rule established by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984). In Leon, the Supreme Court held that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922. Nevertheless, the Court found that an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23. The Leon Court also outlined four situations in which an officer's reliance on a search warrant would not be reasonable:

> (1) the magistrate judge was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
>
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
>
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

Id. at 923.

Under Leon, the proper test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23. This objective test requires a determination of the knowledge of a reasonable officer, not an examination of an officer's subjective motives. United Sates v. Clutchette, 124 F.3d 577, 582 (4th Cir.

9

1994). In this case, the court finds that it cannot be said that "a reasonably well trained officer would have known that the search [of Fiata's office at 35 East Grassy Sprain Road] was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n. 23; see also United States v. Bynum, 293 F.3d 192 (4th Cir. 2002) (applying the Leon good faith exception).

For the reasons stated above, the court finds that Fiata's argument that the affidavit lacks probable cause to believe that Preferred Imaging records would be at Fiata's current address is without merit.

### B.    *Whether the Search Warrant Failed to Satisfy the Specificity Requirement of the Fourth Amendment*

Turning to the next argument, Fiata contends that the search warrant at issue fails the particularity requirement of the Fourth Amendment and therefore, is overbroad; and that the execution of the search warrant constitutes a general search of all of Preferred Imaging's records which is tantamount to a fishing expedition.[2] Fiata argues that the warrant authorized seizure of virtually every document and record related to Preferred Imaging; however, he argues the affidavit in support thereof did not provide probable cause that every record was tainted by illegality. In response, the government maintains that the search warrant and accompanying affidavit are more than sufficient to meet the requirements of the Fourth Amendment.

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing the place to be searched*, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). The Fourth Circuit has recognized that "[t]he requirement set forth in the Fourth Amendment that things to be seized be particularly described is to

---

[2] The court notes that this is the argument presented in Fiata's motion and memorandum in support thereof.

10

prevent 'a general, exploratory rummaging in a person's belongings.'" United States v. Torch, 609 F.2d 1088, 1089 (4th Cir. 1979) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)). Yet, the Court has held that "[w]e have previously recognized that the specificity required for a warrant varies with the circumstances within a 'practical margin of flexibility.'" United States v. Shilling, 826 F.2d 1365, 1369 (4th Cir.1987) (quoting Torch, 609 F.2d at 1090), implied overruling on other grounds recognized by United States v. Starkes, 32 F.3d 100, 101 (4th Cir. 1994). The Court has also stated that the preferred standard in this regard is "a pragmatic one: [t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and types of items involved . . . . " Torch, 609 F.2d at 1090 (quotation and citation omitted).

In the case at bar, the search warrant issued for Fiata's office dealt with records regarding numerous individuals and businesses, as the Postal Inspector's investigation in New York was not limited to the activities of Preferred Imaging. The warrant specifically permitted agents to search for the following:

> Any and all business, tax, accounting, financial and investment records, including corporate records, trust records, bank records, investment records, workpapers, correspondence, memoranda, canceled checks, facsimiles, notes, notebooks, telephone and address records, electronic organizers and their contents, pagers and their contents, datebooks, organizers, and tax returns and forms, relating to:
>
> Richard Martino, Norman Chanes, Bruce Chew, Mical Properties, Inc., Telcom Online, Inc., Telecom Online, Inc., Lexitrans, Inc., Overland Data Center, Dynamic Telecommunications, Inc., Westford Telecommunications, Inc., The Crescent Publishing Group, Inc., the Dee Irrevocable Trust, the Jan Irrevocable Trust, the May Irrevocable Trust, Qualitel, the Kay Bee Irrevocable Trust, Daniel Martino, the Que Irrevocable Trust, the Aly Irrevocable Trust, the Yankee Irrevocable Trust, the Forty Niner Irrevocable Trust, the Cowboy Irrevocable Trust, the Lion King Irrevocable Trust, the Fisher King Trust, Salvatore Locascio, Tully Internet Services, LLC, Elia J. Fiata, Paula Fiata, the Elia A. Fiata Pension Plan, James Chanes, the Cohen Partnership, L.P., Howard A. Cohen IRA, Faith Cohen IRA, Benjamin Cohen Rollover, James Chanes' JACF Revocable Trust, Barbara Cohen, Info Access, Creative Program

>   Communications, Inc., *Preferred Imaging, Joseph Locascio, Joyce Locascio, Frank Locascio*, Local Exchange Company, LLC, Local Exchange Carriers, LLC, Cass County Telephone, FSE Consulting Corp., Baseline Communications, the Titan Fund Ltd, and Voice & Data Systems, however stored, and to search and seize, for the purpose of finding such stored records:
>
>   (a) computer equipment, including components, and hardware (defined as processing units, hard drives, storage units, interconnecting cables, and peripheral items), computer software, peripherals, storage devices, and access instructions and devices, including floppy diskettes, hard disks, programs, laser disks, CD-ROM, back-up disks, tape programs, word processing programs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, Bernouli drives, electronic notebooks, user manuals, passwords, coded information, keys, and printouts or readouts from any magnetic storage device: and
>
>   (b) computer hardware, including computers, central processing units, external and internal drives and external and internal storage equipment or media, terminals or video display units, together with peripheral equipment such as modems, computer or data processing software, or data including, but not limited to, hard disks, floppy disks, magnetic tapes, integral RAM or ROM units, and any other permanent or transient storage device(s); stored electronic mail whether contained on magnetic tape, diskettes, photo-optical devices, or any other medium computer-related documentation, data security devices, manuals for hardware, software, and peripherals, including any and all written or printed material which provides instructions or examples concerning the operation of a computer system, computer software, and or any related devices.
>
>   All of which constitutes evidence of money laundering, in violation of 18 U.S.C. § 1956, engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957; mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and credit card fraud, in violation of 18 U.S.C. § 1028.

Search warrant, Entry #148-2, p.3 (emphasis added).

Keeping in mind that the search warrant at issue dealt with an investigation of a number of individuals, companies, and separate possible crimes, this court finds that the warrant is not overbroad. Notably, the warrant seeks an array of specified records related to particular individuals and companies as well as those records that constitute evidence of a specified number of crimes, which included money laundering, mail fraud, wire fraud, and credit card fraud. The court notes that the Fourth Circuit found

in Shilling that although the warrant in that case used generic terms (such as books, records, bank statements, etc.) without detailed descriptions, it was acceptable, since the government "could hardly have known in detail what precise business records were maintained by the defendant." Id., 826 F.2d at 1369. The Court went on to hold that there was also "no flaw in the fact that the documents covered by the warrant did not have specific time periods attached." Id.

As evident from above, the warrant being considered in the case at bar goes to some painstaking effort to describe in detail different possible forms of the business records, which the court notes were limited to the specified individuals and companies named in the warrant as well as those records that constitute evidence of a specified number of crimes.

The court finds that the warrant in this case can be distinguished from the cases cited by Fiata regarding the particularity requirement. In United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995), the Ninth Circuit noted that "[e]xcept for vague references to 'fraudulent' transactions and possible disparities between actual and reported income, the warrant failed to give any indication of the alleged crime to which the seized documents pertained." In Center Art Galleries-Hawaii, Inc. v. United States, 875 F.2d 747, 750 (9th Cir. 1989), the Ninth Circuit noted that "[t]he warrants' provision for the almost unrestricted seizure of items which are 'evidence of violations of federal criminal law' without describing the specific crimes suspected is constitutionally inadequate." In United States v. Spilotro, 800 F.2d 959, 965 (9th Cir. 1986), the Ninth Circuit expressed concern that "the only limit on the search and seizure was the requirement that the items seized be evidence of a violation of any one of thirteen statutes, some of exceptional scope." In the case at bar, the court finds that the warrant is not as vague or broad as in those cases cited by Fiata. As noted above, the warrant in this case lists specific types of records of specific individuals and specific companies limited by reference to specific crimes. For

the reasons stated above, the court finds that the warrant at issue in this case meets the particularity requirement of the Fourth Amendment and the execution of the search did not amount to a general "exploratory" search.

Moreover, assuming *arguendo* that the warrant in fact fails to meet the particularity requirement, the court finds, contrary to the defendant's argument otherwise, that the good faith exception to the exclusionary rule established in Leon is available to challenge the particularity requirement and that the postal agents who executed the warrant acted in objective good faith as to the legitimacy of the warrant. See Id., 468 U.S. at 923. The court finds that it cannot be said that "the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid." Id. This court notes that United States District Judge Carol Bagley Amon of the United States District Court for the Southern District of New York examined the search warrant at issue with regard to other Defendants before her, and without making a determination of whether the particularity requirement was met, reached the same conclusion as this court with regard to the applicability of the good faith exception as to this warrant. See United States v. Salvatore LoCascio, et al., (1:03-cr-00304-CBA, Document # 455), Government's Exhibit #3.

Although the court has found above that the warrant in this case meets the particularity requirement of the Fourth Amendment and was sufficient to prevent a "general exploratory rummaging," Fiata also contends that, independent of the breadth of the search, the warrant was defective because the Postal Inspector's underlying affidavit did not establish probable cause to seize all of the items described in the warrant. Fiata maintains that the affidavit in support of the warrant did not establish probable cause that every business record of Preferred Imaging was tainted by illegality. Again, Fiata contends the warrant authorized the seizure of every document of Preferred Imaging

14

without reference to any time limitation, subject limitation, or criminal offenses involved.

The court must first note that it does not concur with Defendant Fiata's contention that the warrant at issue was lacking reference to subject limitation or criminal offenses involved. As noted above, the court finds that the warrant in this case is not as vague or broad as Fiata contends. Again, the warrant lists specific types of records of specific individuals and specific companies limited by reference to specific crimes. With regard to the absence of time limitation, the court notes once again that the Fourth Circuit held in Schilling that there was "no flaw in the fact that the documents covered by the warrant did not have specific time periods attached. The dates of the specific documents could not have been known to the government . . . ." Id., 826 F.2d at 1369. As such, the court finds Fiata's argument that the affidavit lacked probable cause for the warrant's seizure of every Preferred Imaging document lacks merit because the court does not believe that the warrant authorized seizure without limitation.

However, even assuming *arguendo* that the warrant is as vague or broad as Fiata maintains, the court finds that the supporting affidavit provides sufficient indicia of probable cause for a general or broad search and seizure. In reaching this conclusion, the court finds that the Fourth Circuit's opinion in United States v. Oleyede, 982 F.2d 133 (4th Cir.1992), is applicable to the issues presented in the case at bar. In that case, Attorney Oleyede was convicted of a scheme to defraud the Immigration and Naturalization Service by falsifying documents for citizenship application of Nigerians and Ethiopians. Id. at 135. The Court reviewed a series of cases in which the businesses searched were supposedly "permeated by fraud" and determined that general searches are permissible if supported by the search warrant application or affidavit. Specifically, the court held that

[W]here there is probable cause to believe that a business is "permeated with fraud,"

15

> either explicitly stated in the supporting affidavit or implicit from the evidence therein set forth, a warrant may authorize the seizure of all documents relating to the suspected criminal area but may not authorize the seizure of any severable portion of such documents relating to legitimate activities.

Id. at 141. The affidavit in support of the search warrant in this case dealt with numerous individuals and companies, however, the portion involving Preferred Imaging is as follows:

### INSURANCE FRAUD SCHEME

> Law enforcement agents in Myrtle Beach, South Carolina have provided me with information concerning an insurance fraud scheme, records of which are believed to be located at the FIATA OFFICE. Specifically, the investigation in South Carolina has shown that a company known as Preferred Imaging obtained an MRI machine and rented an office in Myrtle Beach in the same building as the Comprehensive Care and Pain Management Center, operated by Dr. David Michael Woodward. In January 2003, Woodward pled guilty to money laundering, conspiracy to distribute a controlled substance and heath care fraud in the District of South Carolina, pursuant to a cooperation agreement. His guilty plea stemmed from the illegal practice of unwarranted prescriptions of oxycontin (oxycodone) to drug abusers, and the ordering of unwarranted tests, including MRIs, to support those improper prescriptions.

> During interviews, Woodward informed agents in South Carolina that he had referred a substantial amount of business to Preferred Imaging. In return, Woodward received a kickback in the form of $5,000 per month in rent for space appraised at only $750 per month. He also received fees for allegedly interpreting test results, and a consulting fee, all from Preferred Imaging. When Preferred Imaging closed, Woodward "purchased" the MRI machine for $20,000, which he claimed he was already "owed," so that no money changed hands.

> Business records list Joseph Locascio's wife Joyce, and their son, Frank, as owners of Preferred Imaging, which was incorporated in 1996 with an address of 645 Bronx River Road, Yonkers, New York. This address is Fiata's former business address. The investigation in South Carolina has further shown that Fiata handled the records and finances of Preferred Imaging from the FIATA OFFICE, having provided checks with the address of 645 Bronx River Road during the time that his office was based there. Based on the foregoing, probable cause exists to believe that records of Preferred Imaging will be housed at Fiata's current office, where his other business, investment and financial files are now located, at the FIATA OFFICE.

Affidavit in Support of Application for Search Warrants, Entry #133-4, p. 2-3.

As evidenced above, Postal Inspector Cynthia Fraterrigo's affidavit demonstrates that: (1) Preferred Imaging was co-located with Comprehensive Care and Pain Management Clinic (hereinafter "Comprehensive Care"); (2) Comprehensive Care was operated by Dr. David Michael Woodward; (3) Dr. Woodward was providing unwarranted prescriptions of oxycontin to drug abusers; (4) Dr. Woodward supported those improper prescriptions by ordering unwarranted MRIs through Preferred Imaging; (5) the MRIs resulted from a kickback scheme wherein Dr. Woodward referred a substantial amount of his MRI business to Preferred Imaging in exchange for various payments; (6) Dr. Woodward pled guilty to illegal drug distribution, money laundering, and health care fraud; and (7) the financial records of this scheme would be found at Defendant Fiata's office.

The court finds that in this case, the facts presented in the affidavit establish probable cause to believe that Preferred Imaging was a business permeated with fraud and it was reasonable for the magistrate judge reviewing the affidavit to have probable cause to believe that there was no portion of Preferred Imaging's business that was unrelated to the suspected criminal activity or permeated with fraud, thereby justifying a broad warrant permitting a seizure of all records under the precedent established in Oleyede.  See Id.[3]

Lastly, Fiata makes much of the fact that the affidavit does not say that Preferred Imaging is "solely and entirely a fraudulent business," or in other words, permeated with fraud. The Oleyede Court dismissed this argument in that case when it found that "reversing [the] conviction for the government's failure to state affirmatively in its affidavit that [the] office was 'permeated with fraud' would violate our holding that courts should not suppress evidence seized because of 'hypertechnical errors.'" Id. at 140-141.  As such, the court finds this argument lacks merit.

---

[3] Moreover, even if there was not probable cause, the court finds Leon would apply.

## II. Request for Dismissal of Counts Two through Five (2-5) of the Indictment

Defendant Fiata's motion to suppress also requests that the court dismiss counts two through five (2-5) of the Indictment as to him. Fiata maintains that the grand jury must have been misadvised as to the statute of limitations governing offenses under 42 U.S.C. § 1320a-7b(b) (counts 2-5) or misinformed as to the facts surrounding this case, or it would not have returned an Indictment on counts 2-5 against him. In support of this argument, Fiata points to a January 2, 1998 letter in which he renounced all operational control and responsibility of Preferred Imaging. Fiata admits that he maintained a ten percent (10%) ownership interest in Preferred Imaging and retained the positions of Secretary and Treasurer. Therefore, he candidly concedes that his dismissal argument is not being made as to the allegations of a conspiracy made in count 1. However, Fiata does contend that the substantive counts (2-5) should be dismissed as to him because he had no operational control in the company after 1998 other than preparation of the corporate income tax returns.

Fiata states that just because he may be a member of an alleged conspiracy, such does not make him responsible for the substantive acts of paying bribes or kickbacks to Dr. Woodward. Fiata argues that the checks which make up the substantive counts of 2-5 were written and paid to Dr. Woodward after the January 2, 1998 letter in which he allegedly relinquished all control of Preferred Imaging. Fiata argues that had the grand jury been correctly instructed as to the law or had it been aware of the letter in which he transferred all operational responsibility for the company to Defendant Frank LoCascio in 1998, he would not have been indicted on counts 2-5. Therefore, Fiata requests that the court dismiss counts 2-5 of the Indictment as to him.

At the hearing on this motion, the government argued that counts 2-5 of the Indictment should not be dismissed as to Fiata. The government takes the position that Fiata participated in furthering

the kickback scheme through his partial ownership and positions as Secretary and Treasurer of the company and therefore, it was proper for him to be included in counts 2-5. At the very least, the government argues that Fiata aided and abetted in the issuance of the checks that make up counts 2-5. The government maintains that the evidence at trial will show that Fiata either participated or aided and abetted in the conduct that makes up counts 2-5. On that note, the government contends that aiding and abetting does not have to be explicitly charged in the Indictment, while Fiata argues that the Indictment must, and did not charge him with aiding and abetting in counts 2-5.

After due consideration, this court finds that Fiata's request for the court to dismiss counts 2-5 of the Indictment as to him is without merit. Although a district court may dismiss an Indictment pursuant to its supervisory power if it finds that the grand jury was misled or misinformed and there exists a grave doubt that the decision to indict was free from the substantial influence of that misinformation, United States v. McDonald, 61 F.3d 720 (4th Cir. 2000), overruled on other grounds by United States v. Wilson, 205 F.3d 720 (4th Cir. 2000), the court finds that such is not necessary in the case at bar. Contrary to Fiata's assertion otherwise, the Fourth Circuit has found that aiding and abetting is implicitly included in every substantive offense. United States v. Pigford, 518 F.2d 831, 834-835 (4th Cir. 1975) ("An indictment or information need not specifically charge aiding and abetting in order to support a conviction on that charge. Rather, since Section 2 [18 U.S.C. § 2] applies implicitly to all federal offenses, all indictments and informations are to be read as if the alternative provided for in Section 2 were embodied in each count thereof" (citations omitted)). Considering such, the court finds the defendant's argument in this regard lacks merit.

## Conclusion

For the reasons stated above, those given in the government's brief, and at oral argument,

Defendant Fiata's motions to suppress and for other relief [Entries # 133 & 225[4] ] are hereby **DENIED**.

    **IT IS SO ORDERED**.

                                       s/ R. Bryan Harwell
                                       R. Bryan Harwell
                                       United States District Judge

August 30, 2006
Florence, South Carolina

---

[4] # 225 is simply a motion to renew the # 133 motion.